IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICOLE MADDOX
Individually and as Next of Friend of
Janiah Olayiwola, Minor Child,

    Plaintiff,

      v.

GEORGIA DEPARTMENT OF
HUMAN SERVICES
DIVISION OF FAMILY &
CHILDREN SERVICES, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:10-CV-2742-TWT

ORDER

This is a civil rights action.  It is before the Court on Children's Healthcare of

Atlanta's Motion to Dismiss [Doc. 4]; Children's Healthcare of Atlanta's Motion to

Strike [Doc. 12]; and the Defendants' Joint Motion to Dismiss [Doc. 11].  For the

reasons set forth below, the Court DENIES Children's Healthcare's Motion to

Dismiss, DENIES Children's Healthcare's Motion to Strike, and GRANTS IN PART

and DENIES IN PART the Defendants' Joint Motion to Dismiss [Doc. 11].

T:\ORDERS\10\Maddox\mdtwt.wpd

I. <u>Background</u>

The Plaintiff, Nicole Maddox, is the mother and sole legal guardian of Janiah Olayiwola ("Janiah").  Janiah was born on September 3, 2008.  On November 11, 2008, Janiah underwent surgery at Children's Healthcare of Atlanta, Inc. ("Children's").  While visiting Janiah at Children's, Maddox was involved in an altercation with Veronica Olayiwola, Janiah's paternal grandmother.  In response to the dispute, hospital security escorted Maddox from the premises.  When Maddox returned to Children's the next day, a security officer informed her that she would be arrested if she attempted to visit her daughter.

In preparation for Janiah's release from Children's, Babette Stephens, a Gwinnett County Department of Family & Children Services ("GDFACS") caseworker, met with Olayiwola and Children's employees on December 10 to develop a safety plan (the "Safety Plan") for Janiah.  Maddox, as Janiah's legal guardian, was not involved in this meeting.  The Safety Plan awarded physical custody of Janiah to Olayiwola without involvement of the Juvenile Court.  (<u>See</u> Compl., Ex. A.)  Further, the Safety Plan instructed Olayiwola to call the police if Maddox attempted to visit Janiah.  <u>Id.</u>

The day after Janiah was released from Children's, Maddox attempted to visit Janiah at Olayiwola's home.  Pursuant to the Safety Plan, Olayiwola called the police.

When a police officer arrived, he contacted Stephens by telephone.   Stephens instructed the officer to prevent Maddox from seeing her daughter.   Maddox left Olayiwola's home believing that she would be arrested if she attempted to see Janiah.

After being unable to visit Janiah at Olayiwola's home, Maddox contacted Stephens about the Safety Plan.  Stephens refused to discuss the matter and hung up on Maddox.  Subsequently, Maddox brought an action in Gwinnett County Juvenile Court.  On September 8, 2009, Judge Stephen E. Franzen issued a Protective Order finding that Maddox  had been deprived of her custody rights without due process of law.  Maddox finally regained legal and physical custody of Janiah on November 12, 2009.

On July 23, 2010, Maddox filed this suit individually and as Next of Friend of Janiah against the Georgia Department of Human Services ("DHS"), the Division of Family & Children Services ("DFACS"), GDFACS, Stephens, Children's, John Does 1-5 and Corporations A-E.   Maddox claims that DHS, DFACS, GDFACS, and Stephens failed to perform ministerial functions as state employees.  See Ga. Const. art. 1, sec. 2, ¶ IX(d).  Maddox also asserts claims against the Defendants for kidnaping, false imprisonment, and interference with custody without lawful authority.   See O.C.G.A. § 16-5-40; O.C.G.A. § 16-5-41(a); O.C.G.A. § 16-5-

45(b)(1)(A).  Finally, Maddox claims that Stephens is liable under 42 U.S.C. § 1983 for violations of Janiah and Maddox's Eighth and Fourteenth Amendment rights.

Children's has filed a Motion to Dismiss [Doc. 4].  Children's argues that the Plaintiff has not stated a valid claim for kidnaping, false imprisonment, or interference with custody.   Further, Children's argues that the Plaintiff's claims sound in professional malpractice.   Thus, Children's contends, the Complaint should be dismissed because Maddox has not filed an expert affidavit as required by Georgia law.  See O.C.G.A. § 9-11-9.1.

In response, the Plaintiff filed an Amended Complaint seeking damages for failure to perform ministerial duties, § 1983 claims, intentional infliction of emotional distress, and false imprisonment [Doc. 6].  Children's then filed a Motion to Strike the Amended Complaint as untimely filed [Doc. 12].   Finally, the Defendants filed a Motion to Dismiss for failure to state a claim [Doc. 11].   The Defendants argue that the Complaint does not allege a constitutional violation and that Stephens is entitled to absolute and qualified immunity.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).  A complaint may survive a motion

to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

### III.  Discussion

#### A.    Failure to File Expert Affidavit

Children's argues that the Complaint should be dismissed because the Plaintiff did not file an expert affidavit.  In Georgia, "[i]n any action for damages alleging professional malpractice . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify." O.C.G.A. § 9-11-9.1(a).  "Whether an action alleges professional malpractice or simple negligence depends on whether the

professional's alleged negligence required the exercise of professional judgment and skill." Upson County Hosp., Inc. v. Head, 246 Ga. App. 386, 389 (2000) (quotation marks omitted).  "A professional negligence or professional malpractice claim calls into question the conduct of the professional in his area of expertise." Id.  Further, "complaints asserting claims for intentional misconduct against a professional . . . do not require the inclusion of an expert affidavit." Murrah v. Fender, 282 Ga. App. 634, 636 (2006).

In Goodin v. Gwinnett Health System, Inc., 273 Ga. App. 461 (2005), the plaintiff, involuntarily committed to a psychiatric facility, sued her doctor for false imprisonment.  "[The plaintiff's] claim of false imprisonment center[ed] around Dr. Shah's alleged inaccurate evaluation and misdiagnosis of [the plaintiff's] mental condition which led to her involuntary commitment and the institution of medical treatment and monitoring procedures." Id. at 462.  The Georgia Court of Appeals held that the affidavit requirement applied to the plaintiff's claim of false imprisonment. Id. at 462-63.  The court reasoned that the plaintiff's claim called "into question his conduct as a medical professional in his area of expertise, i.e. psychiatric evaluation." Id.

By contrast, in Williams v. Alvista Healthcare Center, Inc., 283 Ga. App. 613 (2007), the plaintiff alleged that the defendant "failed to document . . . complaints of

chest pain in accordance with applicable Department of Health regulations."  The court held that the claim for failure to document the complaints, in violation of administrative record-keeping requirements, was not subject to the affidavit requirement.  Id.  Here, Maddox does not allege that any of the Defendants exercised improper professional judgment.  Rather, the Plaintiff alleges *intentional* misconduct on the part of the Defendants.  See Murrah, 282 Ga. App. at 636 ("[C]omplaints asserting claims for intentional misconduct against a professional . . . do not require the inclusion of an expert affidavit.").  As in Williams, the Plaintiff claims that Stephens and other Children's personnel violated her custodial rights in violation of Georgia law and administrative regulations.  See O.C.G.A. § 19-9-3; Child Protective Services Guidelines §§ 2102.5 & 2102.10.  Unlike Goodin, Maddox does not allege, and the Defendants do not suggest, that the Defendants exercised any professional judgment.  To succeed on her claims, Maddox must show that the Defendants failed to comply with federal and state law and administrative regulations.  No expert need testify regarding any professional standard of care.  See Goodin, 273 Ga. App. at 463 (finding affidavit required where plaintiff "must establish what would have constituted adequate medical care, which requires the knowledge of an expert.").  For this reason,

the Plaintiff's claims are not subject to the expert affidavit requirement.[1]

   B.   Children's Motion to Dismiss for Failure to State a Claim

   Children's has also moved to dismiss for failure to state a claim.   In the Complaint, the Plaintiff alleges that the Defendants committed kidnaping under O.C.G.A. § 16-5-40, false imprisonment under O.C.G.A. § 16-5-41(a), and interference with custody under O.C.G.A. § 16-5-45(b)(1)(A) [Doc. 1].   All three statutes provide criminal penalties.   Children's argues that these criminal statutes do not provide private causes of action.

   On September 14, however, the Plaintiff amended her Complaint [Doc. 6].[2] The Amended Complaint does not reference any criminal statute.   Rather, the Plaintiff asserts claims for failure to perform ministerial duties, § 1983 claims, false imprisonment under O.C.G.A. § 50-7-20, and intentional infliction of emotional

---

   [1]The Plaintiff also argues that the expert affidavit requirement is not applicable in federal court.   Specifically, Maddox contends that Federal Rule 8(a) governs pleading requirements in federal court.   See Hanna v. Plumer, 380 U.S. 460, 471 (1965).   The Federal Rules, however, only "apply to a civil action after it is removed from a state court."   FED. R. CIV. P. 81(c); see also Tompkins v. Cyr, 202 F.3d 770, 787 (5th Cir. 2000) ("The federal rules do not apply to filings in state court, even if the case is later removed to federal court.").   Here, the Complaint and Children's Motion to Dismiss were filed in state court.   Although the case was later removed, state law governs the pleading requirements with respect to the Complaint.

   [2]Children's has filed a Motion to Strike the Plaintiff's Amended Complaint [Doc. 12].   As discussed below, however, the Amended Complaint was timely filed and Children's Motion to Strike is without merit.

distress [Doc. 6].  O.C.G.A.§ 50-7-20 defines the tort of false imprisonment.  See

O.C.G.A. § 50-7-20.  Thus, Children's Motion to Dismiss for failure to state a claim

is moot.

> C.    Children's Motion to Strike

Children's has moved to strike the Amended Complaint because it was untimely

filed.  Amended Federal Rule of Civil Procedure 15(a) provides:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a).  Here, the Complaint required a responsive pleading.  Children's

filed its Answer and Motion to Dismiss on August 26, 2010.  Maddox filed her

Amended Complaint on September 14, 2010, 18 days after Children's filed its

Answer.  Thus, Maddox amended the Complaint less than 21 days after Children's

filed its Answer.  For this reason, the Amended Complaint was timely filed.

> D.    The Defendants' Joint Motion to Dismiss for Failure to State a Claim

> 1.    Eighth Amendment

The Defendants argue that the Complaint fails to state an Eighth Amendment

violation.  "[T]he State does not acquire the power to punish with which the Eighth

Amendment is concerned until after it has secured a formal adjudication of guilt in

accordance with due process of law." City of Revere v. Massachusetts Gen. Hosp.,

463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40

(1977)).  Here, neither the Plaintiff nor Janiah has been found guilty of a crime.  Thus,

the Eighth Amendment does not apply.  See id. ("Because there had been no formal

adjudication of guilt against [the Plaintiff] at the time he required medical care, the

Eighth Amendment has no application.").  For this reason, the Plaintiff's Eighth

Amendment claims are dismissed.

2.    Fourteenth Amendment

The Plaintiff argues that the Defendants violated her Fourteenth Amendment

due process rights.  The Due Process Clause has two components: procedural due

process and substantive due process.  McKinney v. Pate, 20 F.3d 1550, 1555 (11th

Cir. 1994).  First, the Plaintiff argues that the Defendants' conduct violated her

substantive due process rights.  Substantive due process "protects those rights that are

'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Id.

at 1556 (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

"The Supreme Court has held that parents have a constitutionally protected

liberty interest in the care, custody and management of their children."  Doe v.

Kearney, 329 F.3d 1286, 1293 (11th Cir. 2003); see also Santosky v. Kramer, 455

U.S. 745, 753 (1982) (noting "fundamental liberty interest of natural parents in the

care, custody, and management of their child.").  "To prevail on a claim about family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification."  <u>Foy v. Holston</u>, 94 F.3d 1528, 1536 (11th Cir. 1996).

In <u>Foy</u>, state social workers placed the plaintiffs' children in foster care in response to child abuse allegations.  <u>Id.</u>  The plaintiffs sued for violations of their Fourteenth Amendment substantive due process rights.  <u>Id.</u>  Recognizing the right to family privacy, the Eleventh Circuit noted that "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations."  <u>Id.</u> (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 8 (1st Cir. 1993)).  The court granted the defendants' motion for summary judgment, reasoning that the plaintiffs' children reported abuse and did not want to return to their parents.  <u>Id.</u> at 1537.  Summary judgment was proper "even if the investigation and custody determination procedures were not 'textbook perfect.'"  <u>Id.</u>

Here, Stephens interfered with the Plaintiff's "protected liberty interest in the care, custody and management of" her child.  <u>Doe</u>, 329 F.3d at 1293.  The Safety Plan, promulgated by Stephens in violation of agency procedures and state law, violated Maddox's constitutional right to custody of Janiah.  After Janiah was released from Children's, Stephens further prevented the Plaintiff from regaining custody of her

daughter by directing Gwinnett County Police to enforce the Safety Plan.  As a result, the Plaintiff did not regain physical and legal custody of Janiah until November 12, 2009, almost a year after Maddox first lost custody.

The Defendants' reliance on Foy is misplaced.  Unlike the defendants in Foy, Stephens' actions were not based on allegations of child abuse.  See Foy, 94 F.3d at 1537 (record showed that child "(1) alleged abuse by her parents, (2) had bruises on her arm, (3) said she did not wish to return to her parents, and (4) threatened suicide.").  Still, the Defendants suggest that the altercation between Maddox and Olayiwola "was serious enough for the hospital to call security." (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 5).  There is no indication, however, that this dispute involved any allegations of abuse.[3]  Indeed, unlike Foy, the Defendants do not offer any evidence of child abuse.  The right to family integrity does "not include a constitutional right to be free from child abuse investigations." Foy, 94 F.3d at 1536-37.  Here, however, there is no evidence that any child abuse investigation was ever conducted.

The Defendants also argue that "a state may constitutionally remove children threatened with imminent harm when it is justified by emergency circumstances." Doe, 329 F.3d at 1293.  "By limiting warrantless removals [of children] to true

---

[3]The parties have not indicated the nature of the dispute between Maddox and Olayiwola.

emergencies, the law 'seeks to strike a balance among the rights and interests of parents, children, and the State.'" Id. at 1294 (quoting Tenenbaum v. Williams, 193 F.3d 581, 594 (2d Cir. 1999)).  Here, no emergency existed.  Again, the Defendants contend that Maddox's altercation with Olayiwola constituted an emergency requiring immediate action.  After the dispute, however, hospital staff allowed Maddox to visit and feed Janiah before escorting her from the premises.  Further, as discussed above, the Defendants do not explain why the argument between Maddox and Olayiwola required immediate termination of the Plaintiff's custody rights.  Although perhaps disruptive to the hospital, there is no indication that the dispute even concerned Janiah.  Thus, by depriving Maddox of custody without sufficient justification, Stephens interfered with the Plaintiff's "constitutionally protected liberty interest in the care, custody and management of [her] children."  Doe, 329 F.3d at 1293.  For this reason, the Plaintiff's substantive due process claim should not be dismissed.

Second, the Plaintiff argues that Stephens' failure to follow Georgia law and administrative protocols constitutes a procedural due process violation.  Procedural due process requires that the government provide an opportunity to be heard at a meaningful time and in a meaningful manner.  Mathews v. Eldridge, 424 U.S. 319, 334 (1976).  In Powell v. Georgia Department of Human Resources, 114 F.3d 1074 (11th Cir. 1997), the plaintiff brought a procedural due process claim following the

death of his infant son.  The plaintiff alleged that state welfare employees disregarded agency procedure by allowing the child's grandmother to remove the child from his home.  Id. at 1076.  The court held that the employees' failure to follow agency regulations did not constitute a procedural due process violation.  Id. at 1082.  The Eleventh Circuit reasoned that "there is no procedural due process violation when the act complained of is the random and unauthorized act of a state employee for which adequate postdeprivation process is available."  Id. at 1081; see also Hudson v. Palmer, 468 U.S. 517, 533 (1984) (finding that intentional deprivation of property in violation of state procedure did not constitute procedural due process violation where adequate postdeprivation procedures existed).  The court noted that damages under the Georgia Tort Claims Act constituted adequate postdeprivation procedure, even if the state was ultimately entitled to sovereign immunity.  Powell, 114 F.3d at 1082 n.11 (citing Rittenhouse v. DeKalb County, 764 F.2d 1451, 1459 (11th Cir. 1985)).

The facts in this case are similar to those in Powell and Hudson.  Here, Maddox claims that Stephens ignored agency procedure by making a custody determination without involvement of the Juvenile Court.[4]  As in Powell, the state set forth adequate predeprivation procedures.  Indeed, Maddox cites those procedures extensively in her

---

[4]Specifically, the Plaintiff argues that Stephens failed to follow the procedures set forth in O.C.G.A. § 15-11-14 and Child Protective Services Guidelines §§ 2102.5 & 2102.10.  (See Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss.)

brief. (See Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss.)  Stephens' failure to follow those procedures was a "random and unauthorized act of a state employee for which adequate postdeprivation process is available." Id. at 1081; see also Hudson, 468 U.S. at 533 ("[I]ntentional deprivations [of property] do not violate that [Due Process] Clause provided, of course, that adequate state post-deprivation remedies are available.").  Further, as in Powell, Maddox may seek postdeprivation relief in the form of damages under Georgia tort law.  For these reasons, the Plaintiff's procedural due process claims are dismissed.

### 3.   Absolute Immunity

The Defendants contend that Stephens is entitled to absolute immunity.  "In § 1983 cases, absolute immunity is accorded to functions intimately associated with the judicial phase of the criminal process." Scarbrough v. Myles, 245 F.3d 1299, 1305 (11th Cir. 2001) (quotations omitted).  In determining the applicability of absolute immunity, the Court considers the following factors: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." Cleavinger v. Saxner, 474 U.S. 193, 202 (1985).

Here, although Stephens exercises judgment in the performance of her job, her duties are not "closely associated with the judicial process." Id. at 200.  Importantly, Stephens' responsibilities are accompanied by few of the procedural safeguards usually associated with judicial decision-making.   See id. at 203-204 (prison committee charged with adjudicating allegations of inmate misconduct not entitled to absolute immunity where hearing did not include procedural safeguards); Wood v. Strickland, 420 U.S. 308, 320 (1975) (school board members charged with adjudicating violations of school regulations not entitled to absolute immunity).  Further, the adjudicatory process (to the extent there was any adjudication in this case) was not adversarial.  Indeed, Maddox was not involved in the custody determination.  For these reasons, Stephens is not entitled to absolute immunity.

    4.   Qualified Immunity

The Defendants assert that Stephens is entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."[5]  Foy, 94 F.3d at 1532.

_____

[5]  Having already determined that Stephens' conduct violated Maddox substantive due process rights, the Court must determine whether this right was "clearly established."  See Pearson v. Callahan, 129 S. Ct. 808, 821 (2009) (courts considering qualified immunity must determine whether conduct violated constitutional right and whether that right was clearly established, but may do so in

Here, Stephens was exercising her discretionary duties when she made a custody determination with respect to Janiah.  See Powell, 114 F.3d at 1077 (finding that social worker's decision to allow baby to leave safety of aunt's home in violation of agency procedures was discretionary act).  Thus, the Court will address whether Stephens violated a clearly established constitutional right.

"The Supreme Court has held that parents have a constitutionally protected liberty interest in the care, custody and management of their children." Doe, 329 F.3d at 1293; see also Santosky, 455 U.S. at 754 n.7 (Fourteenth Amendment protects fundamental liberty interest in care and custody of children).  Here, Stephens interfered with the Plaintiff's liberty interest by preventing Maddox from exercising care and custody over Janiah.  The Defendants stress, however, that in the family integrity context, state officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of clearly established law. See Doe, 329 F.3d at 1293.  Although the contours of due process may be more uncertain in the context of child abuse allegations, there were no such allegations here.  Thus, Stephens' liberty interest in the care and custody of her daughter was clearly established.

Despite the Defendants' insistence, Foy does not require a different result.  In Foy, the court found that clearly established law did not prohibit the state from

any order).

interfering with family integrity in the face of child abuse allegations.  <u>Foy</u>, 94 F.3d at 1536; <u>see also</u> <u>Frazier</u>, 957 F.2d at 931 (finding that social worker's response to sexual abuse allegations did not violate clearly established right to family integrity). Here, as discussed above, there were no allegations of abuse.  Further, the bald assertion that the altercation between Maddox and Olayiwola was an emergency is unconvincing.  The Defendants have not shown that this dispute was even related to Janiah.  For these reasons, Stephens is not entitled to qualified immunity.

5.   <u>Conspiracy Claims</u>

The Plaintiff contends that Children's conspired with Stephens to violate Maddox's constitutional rights.  "[P]rivate defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights."  <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir. 1990). To prove a conspiracy, the Plaintiff must show that the parties "'reached an understanding' to deny the plaintiff his or her rights."  <u>N.A.A.C.P. v. Hunt</u>, 891 F.2d 1555, 1563 (11th Cir. 1990) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)).  More than mere notice pleading is required, however, and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984).

In <u>Bendiburg</u>, the plaintiff alleged a conspiracy between a private hospital and

state officials.  <u>Bendiburg</u>, 909 F.2d at 468.  The plaintiff claimed that hospital employees misrepresented his son's medical condition, causing state workers to seek a temporary custody order.  <u>Id.</u> at 469.  The court declined to dismiss the plaintiff's conspiracy claim, noting that "the district court wrongfully required [the plaintiff] to produce a 'smoking gun' when nothing more than an 'understanding' and 'willful participation' between private and state defendants is necessary."  <u>Id.</u>  If hospital employees exaggerated the plaintiff's son's medical condition as the plaintiff alleged, those employees would be subject to liability under § 1983.  <u>Id.</u>

Here, the Plaintiff alleges that Stephens met with Children's representatives on December 10, 2008, to develop the Safety Plan.  Further, Maddox asserts that Stephens worked with Children's "in her official capacity . . . to prevent Nicole from seeing or regaining custody of Janiah" while Janiah was at Children's.  (Amended Compl. ¶ 14.)  Indeed, Children's released Janiah to her grandmother, Olayiwola, in accordance with the Safety Plan developed by Children's and Stephens.  Accepting the allegation in the Complaint as true, the Plaintiff has shown that Stephens and Children's "reached an understanding" to deny Maddox's constitutional rights.  Taking the allegations in the Complaint as true, Children's acted in concert with Stephens by jointly creating the Safety Plan and by releasing Janiah into Olayiwola's custody in accordance with that Safety Plan.  For these reasons, the Plaintiff's

conspiracy claim should not be dismissed.

6.    Section 1983 Claims Against the Agency Defendants

The Defendants argue that the Plaintiff's § 1983 claims against the agency defendants and Stephens in her official capacity should be dismissed.  The Plaintiff concedes, however, that she is only bringing § 1983 claims against Stephens in her personal capacity.  (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 12.)  Thus, the Court need not address the Defendants' argument.  To the extent that the Amended Complaint asserts § 1983 claims against the agency defendants or Stephens in her official capacity, those claims are dismissed.

7.    State Claims Against Stephens

The Defendants also argue that the state law tort claims against Stephens should be dismissed.  The Plaintiff concedes, however, that she is not bringing state law tort claims against Stephens.  (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 18.)  Thus, the Court need not address the Defendants' argument.  To the extent that the Amended Complaint asserts state law claims against Stephens, those claims are dismissed.

IV.  Conclusion

For the reasons set forth above, the Court DENIES Children's Healthcare's Motion to Dismiss [Doc. 4], DENIES Children's Healthcare's Motion to Strike

[Doc. 12], and GRANTS IN PART and DENIES IN PART the Defendants' Joint

Motion to Dismiss [Doc. 11].

SO ORDERED, this 19 day of November, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge